All right, our fifth case for this morning is United States v. Eleazar Corral Valenzuela. Mr. Eberhardt. May it please the Court, Counsel. Your Honors, over 17 years after our United States government granted my client the precious right of citizenship, that same government came in and filed proceedings to revoke and denaturalize my client. For the majority of those years, our government, through its various representatives, knew that Mr. Corral had pled guilty to a state court felony six months after he was naturalized, but we're still in the dark to this very day why they targeted Mr. Corral to bring proceedings against him. So it sounds to me, Mr. Eberhardt, as though you're actually trying to make a selective prosecution argument. But those are really tough ones to make, especially if the person who is being, I'll say, prosecuted, seems like a good enough word for this, has in fact proven to have done the thing that he's accused of doing. I don't see anything here that it's just people from Mexico or it's just, I don't know what, people of a certain age or something. Only men. The evidence showed that he gave a deceptive answer to a question about his criminal history, and then that carries forward as of the time he takes the oath. So why is it helpful to him, even if it is the situation that the government's not prosecuting everybody? Well, Your Honor, I disagree with you that the evidence showed that he gave a deceptive answer. The deceptive answer was relevant to Counts 2 and 5 that Judge Cannelli did not make a ruling on. Judge Cannelli based the ruling in the revocation of naturalization on the fact that there was a felony conviction during the time of... The window between... Correct. Correct. How can you deny that? There's no evidence that Mr. Corral was even asked that. So... I mean, for the ground that Judge Cannelli uses, what... Why is that wrong? Because the case is all about a constitutional issue. The criminal denaturalization proceedings parrot the civil denaturalization proceedings. There's a 10-year statute of limitations on the criminal. We all know that heinous murderers are let go free because of constitutional violations. Well, this Court has had a lot of denatural... I mean, not a lot. But we have had denaturalization proceedings that even arise out of people who came to the United States in the early 1950s. And it turns out they were participants in the Nazi war camps or otherwise. And all of a sudden it will be 2005 and you're denaturalizing them. There's never in the denaturalization context, to my knowledge, been a notion of an outer period of time that's too long. But the difference is, Your Honor, and this goes through the history of the denaturalization proceedings. First of all, it was the bootleggers, and it seemed like all the bootleggers were denaturalized. Then it was the Nazis, and it seemed like all the Nazis were denaturalized. And then it went to the McCarthy era and the communists were all denaturalized. Now we have a set of individuals, similar to Mr. Correll, who crossed the border continuously since 2004. The government knew at least since 2004. You're also on thin ice if you're trying to say that the government is stopped somehow from bringing this kind of claim. Because, again, you would have to cite me a case. I think I can remember Supreme Court cases that say the government is not subject to that kind of estoppel. When we're talking laches, I'll direct this court to Judge Posner's opinions that even now the bankruptcy court that we cited in our brief said there's this trend. You know, the Constitution, Your Honor, is an allowing... We don't follow trends. I'm sorry? We don't follow trends. We follow the law. I heard that trend argument in other cases involve all sorts of things that the Supreme Court might change their mind or have. Certain utterances of some judge on this court, in your citing one, indicate where he thinks the law is going. Not that it got there. In Supreme Court precedent, and precedent with regard to, I'll get to the laches issue just briefly, is basically all over the place. And one thing that the government and I agree on is to ask this court to come up with some rule whether the laches applies. I don't see any reason that this court would need to do that in this case. And I'm particularly reluctant with an equitable doctrine such as laches to stand up on a pedestal and announce now and for all time there will never be laches against the government. I can't imagine the circumstances that would come along. But I certainly don't see anything in this case that would disqualify the government from bringing this kind of action. The facts are the facts. Mr. Corral did what he did. The timing is what it is. It seems to fit all the criteria under the statute. And it's a statute with no limitations, period. And it doesn't look like you pled laches as an affirmative defense in your answer. And laches, under the rules, is an affirmative defense. Correct. But I brought it in, this motion that Judge Kennelly characterized, and I forget his exact terminology, but he recognized that the laches issue and the equal protection issue were brought up. And if the court is tending toward waiver, I'd say I don't think that should be honored, because the government comes in here and says we would like a ruling also as well as I. Just my last comment on laches is, again, when you look at a 10-year statute of limitations on the criminal side, civil statute parrots the criminal, and there's no statute of limitations. So once you get beyond, I submit, that 10-year period, then you have to look at the equities as being brought. No one's ever held that, though, right? Correct. And what prejudice did your client suffer from the 17-year wait? Because it didn't matter. You had argued below that you couldn't find or you didn't hear the testimony of the agent who interviewed him. But that didn't matter to the court's ruling. So what prejudice is there from the 17 years? Seventeen years of building a business, building a family, and building a life in the United States. But all in the sand, so to speak, based on the commission of a crime of moral turpitude during the statutory period. Had they known that, one assumes he wouldn't have been naturalized. Correct. So I will move on and say I understand the court's position, and I understand, and I will submit to the court the equal protection argument, which Judge Cannelli kind of cast off as actually the better argument to send this back to Judge Cannelli. Again, in the criminal context, what Judge Cannelli did, with all due respect, is say, I look at count one. There was a conviction of moral turpitude in the five-year period. Mr. Correll is going to have to be denaturalized. I look at the criminal statutes, and it says a heinous murder is going to go to jail and maybe get the death penalty or go to life. But an unconstitutional arrest, search, and seizure lets that individual walk out because that's a preliminary consideration. There are some people who think that shouldn't be the case, but anyway. And personally, I may too, Your Honor. But that's the law. Let me invite you, if you want to save a minute or so for rebuttal, that this would be a good time. Thank you. Mr. Platt. Good morning. May it please the court, I'm Stephen Platt for Appley of the United States. Mr. Correll sexually abused his minor family member just before he naturalized. Because that is a crime involving moral turpitude, he was disqualified from naturalizing. His naturalization was thus unlawfully procured, and the district court was correct to revoke it and indeed had to revoke it under 8 U.S.C. 1451A. Mr. Correll finds three things wrong with this result. First, he argues in his brief that sexual abuse of a minor family member under Ninth Circuit law does not involve moral turpitude. He makes this point almost as an aside in his brief and didn't really discuss it here today. And I think that's for good reason. His brief essentially concedes that the district court's holding comports with the precedent of this circuit. But let me just push back a little bit. I think it depends a little bit on what we mean by family member. Certainly if a family member is a parent, a grandparent, a child, whole blood, adoption, stepkid, all the rest of these things, that part of the statute certainly seems unremarkable. There's also, though, where the victim is a child under 18 or somebody and the accused has resided in the household continuously for a year, which caused me to think, well, suppose if there's a foreign exchange student who's living in the household for a year. Suppose somebody decides to let their next-door neighbor live in the house for a year. There are all sorts of situations I can think of that are less intuitively like a family member. So the question is how broad is the statute? It certainly has valid applications. I wouldn't doubt that for a second. Your Honor, the statute has to be assessed under the so-called categorical approach, which asks whether there's a realistic probability that the statute can be violated in a way that is not morally turpitudinous. And so this issue was not argued by Mr. Corral either in the district court or in his briefing here, and Judge Connelly did not take up the issue. But I would argue that that is not in most circumstances going to be how this statute is violated. So your position would be that the reasonable probability test would exclude these more unusual variants? Correct, Your Honor. I would argue that in most circumstances how the statute is most often violated would be with someone that is perhaps within one degree of separation, someone who's a blood relative or a relative by marriage or adoption or that sort of thing. So the second point that Mr. Corral brings up is that he thinks this lawsuit is precluded by the affirmative defenses of latches and selective prosecution. As the district court found, even construed most favorably toward Mr. Corral, the pleadings don't have enough factual allegations to sustain these defenses. Neither defense was raised either, was it, in the answer? That's correct, Your Honor. And we did bring that up, and the district court did actually look at these defenses then and did consider them. So we don't object to this court looking at them, but that is a separate ground by which this court could affirm the district court's decision to reject those defenses. But first, before getting to the facts, we do believe that latches can never apply in civil denaturalization proceedings. So I have to complain about that view only because the word never makes me very concerned when it comes to equitable defense such as this. And I actually was startled to see your brief complain that it's nettlesome, your word, to have to bother to brief this. It made me think, well, maybe you shouldn't work for the government then. I mean, sometimes you have to brief things, and there are fact-specific defenses. I'm sure people who regularly represent employment discrimination defendants also feel that they're being a bit repetitive. But, you know, that's life. And I just really can't – I don't have enough trust in my own ability to foresee circumstances  Well, this, strikes me, is not likely a case given that ground. But facts can change, criminalization standards can change, mores can change. Maybe there was a time that somebody thought you were committing morally turpitudinous behavior. If a man and a woman lived with each other outside of wedlock, and now more than half of the United States lives that way, we don't really blink an eye at it. So, I don't know. I think it's best to stay away from the nevers. Sure, Your Honor. I'll just offer a brief response to that. When I wrote in the brief that it's nettlesome to have to address in these cases, I meant that as an argument to go toward why this case should take it up, as opposed to, that is a reason why. It sounded kind of whiny, actually. Well, I apologize for my word choice then. I definitely did not mean to whine. And you're right, that these sorts of things, if that's the sort of defenses that the government has to push back against, then that's the way it is. That's certainly something that we do in other contexts. Also, Judge Canelli didn't take that particular issue up, as to whether or not latches should ever apply. I'm reluctant to take on something that hasn't been vetted through the district court first. That's fair, Your Honor. I would point out that we think that this court could take the Sixth Circuit's approach. The Sixth Circuit and other courts have concluded that, under Costello v. United States, that the Supreme Court did mean to hold that civil denaturalization is not amenable to latches. But Costello has other language that is not as strong as the Sixth Circuit might have thought. So, again, that's a pretty weak read. That's fair, Your Honor. I'll move on then. On the facts of this case, we think that Judge Canelli had it right when he dismissed that defense. First of all, the district court assumed that there was a lack of diligence on behalf of the government. We disagree with that assertion, but I think that's important to keep in mind here, that there is no issue here on appeal as to whether the government had some bad reason. The government did not file this suit as expeditiously as it could have. That's just assumed for purposes of appeal. How often does the government bring these suits? Well, Your Honor, I don't have the statistics here, but I can just say anecdotally, I know that our office alone, within the Department of Justice's Civil Division, we filed, in the double digits, I would guess closer to 30 this year. As we showed in our brief, that on the issue of naturalized individuals who were convicted of sex crimes, specifically sex crimes against minors, at least in the last 15 years, there's been 10 maybe we had cited in there. So the problem is we need a denominator because a lot of people are naturalized each year, and I think the thing that made this a little unseemly is the political attention that it received as a result of perhaps current policies. You would like to think that we're inside the courthouse. It's the rule of law that's governing. It's not somebody making a political point. Sure, Your Honor. And that's, again, in our brief, we point to cases that were filed well before the beginning of this administration. I believe every one of the cases we cite that was filed in the District Court, not just here in the Northern District of Illinois, down there in the Northern District of Illinois, but all over the nation, and that's been through the past three, four, five administrations. But also, this is an affirmative defense, and like all affirmative defenses, it is the defendant's burden to plead facts sufficient to survive a motion for judgment on the pleadings. And so while that's an interesting argument, Judge Wood, that's not what was in Mr. Corral's answer or motion to dismiss, any specific allegation more than just, well, there's a new administration now. As you suggested, there's nothing saying, oh, the government is discriminating against me or on a class of individuals on the basis of race or any other class that is constitutionally improper to discriminate against. There's also no allegation in there as to discriminatory purpose. And jumping back real quickly to the issue of lashes, diligence is assumed, but also Mr. Corral failed to show any prejudice. There was no evidentiary prejudice that he showed. There's no specific facts relevant to count one. No, I mean, the facts here are clear. We know what crime he committed. We know when he committed it. We know what the statutory period was. So we're not worried about fated memories in this case. Correct, Your Honor. There's the conviction documents which were sufficient for Judge Connelly to make a collateral estoppel finding speak for themselves, and that issue is not being challenged here on appeal. So unless there's any further questions, the United States asks this court to affirm the judgment of the district court in all respects. All right. Thank you. Mr. Everhart. Thank you, Your Honor. In response to Judge St. Eve's question, counsel from the government said anecdotally with regard to how many prosecutions have been brought in the last year. Anecdotally, and it's not before this court, this is the kind of evidence that I was trying to get before the court with my request for discovery on the equal protection claim. All you have to do nowadays is Google all these things, and we learn about the new task force for these types of cases. The prosecutions as of December 10th, 2018 are skyrocketing and whatnot, and that goes to our equal protection claim. We filed a motion to dismiss and strike in the district court that Judge Connelly in his opinion at page 5 says, not so much a motion to dismiss as a request for discovery and a hearing on certain issues that he contends may warrant dismissal of the action. That, Your Honors, is the equal protection claim, and to throw the pun before the court, what trumps the Constitution or the statute? The constitutional procedures I submit to the court have to be addressed first. Judge Connelly, with all due respect, did not do that on the equal protection claim. And the Constitution is the supreme law of the land that we asked him to consider. He didn't, and that's why we asked this be reversed, remanded. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.